**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ILENE SCHWARTZ** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **vs.** | : | **NO. 17-2516** |
| | : | |
| **NICOMATIC, INC.,** *et al.* | : | |
| | : | |

**KEARNEY, J.**                                                        **December 27, 2017**

## <u>MEMORANDUM</u>

Federal law protects an employee from gender and disability discrimination in the workplace and prohibits the employer from firing an employee because she complained about perceived gender discrimination. But federal law does not guarantee a workplace code of civility and a female employee subject to criticism of her job performance unrelated to her gender or disability cannot automatically transform feelings of disrespect – even when justified – into a federal gender or disability discrimination case. She may proceed to a jury trial arguing her employer fired her in retaliation for her alleged complaints of gender discrimination by supervisors to the company president. Following discovery, we today grant an employer's motion for summary judgment dismissing a terminated employee's gender and disability discrimination claims as lacking evidence of discriminatory animus. She is not out of court entirely as she adduced thin but competent evidence of inconsistency or implausibility in the employer's reasons for firing her after a private conversation with the company president. We require our jury evaluate credibility of these differing reasons possibly allowing recovery for retaliation responsive to her complaints of gender discrimination.

## I.     Facts in the light most favorable to Ms. Schwartz.

### A.     Nicomatic, Inc. hires Ms. Schwartz into a newly created human resources role.

Nicomatic, Inc., a subsidiary of a French company, assembles and sells connectors from its Warminster, Pennsylvania facility.[1]  Illene Schwartz began working as an accounting clerk at Nicomatic through a temporary placement agency in April 2014.[2]  Oliver Nicollin, serving as president of the Nicomatic subsidiary in Warminster while David Fisher, the subsidiary's president, worked in its United Kingdom office, hired Ms. Schwartz as a permanent employee in June 2014.[3]  Mr. Nicollin wanted Ms. Schwartz to plan employee parties and events.[4]  Ms. Schwartz disputes his characterization of her initial job duties.

Mr. Fisher returned from the U.K. and resumed serving as Nicomatic's president.[5] Upon returning, Mr. Fisher decided to change Ms. Schwartz's role into a "more traditional HR role."[6]  Ms. Schwartz had no experience or knowledge about human resources when she started in this new role.[7]  Her role included "to be there and motivate and engage employees, to keep records, to do payroll."[8]   Before Ms. Schwartz began this role, Nicomatic did not have a dedicated human resources employee at this location.[9]  Instead, Mr. Fisher and outside consultant ADP TotalSource handled the human resources function.[10]

### B.     Ms. Schwartz's issues with non-supervisor Payman Karim.

Ms. Schwartz began to have issues with Payman Karim, a business unit manager shortly after becoming a permanent employee.[11]  Mr. Karim did not manage Ms. Schwartz.  Mr. Karim was "nasty" towards Ms. Schwartz and "scrutinize[d] [her] for everything he could come up with."[12]  Mr. Karim's conduct "was a constant belittling of [her], regularly" and "he didn't think much of [her] because I was girl."[13]

In August or September 2014, Ms. Schwartz wore a sleeveless shirt to a work meeting.[14] Someone in the meeting made a comment about "how [women's clothes] can't tell the difference between a tank top, and different kinds of shirts."[15] Mr. Karim then commented, "look, Ilene doesn't wear her—follow the dress code rules."[16] While Ms. Schwartz acknowledges Nicomatic's dress code does prohibit sleeveless shirts, she felt Mr. Karim's comment was "uncalled for" because she dressed professionally.[17] Ms. Schwartz also believed Mr. Karim used his approach and comment in the meeting to "belittle" her.[18] Ms. Schwartz reported Mr. Karim's "belittling" dress code comment to Mr. Fischer. He initially ignored her complaint but then asked her to re-write the dress code to define her sleeveless shirt as compliant.[19] Mr. Fisher denies ignoring her first complaint, instead testified the sleeveless shirt incident happened before he returned from the United Kingdom.[20]

At another point, Mr. Karim called Ms. Schwartz into his office to remind her about the confidentiality of their roles and suggested she had breached confidentiality by saying something about an employee.[21] Ms. Schwartz claims Mr. Karim falsely accused her of breaching confidentiality because another employee stated the confidential information, not Ms. Schwartz.[22]

Mr. Karim also "scrutinized" Ms. Schwartz for snacks in the lunchroom.[23] First, Mr. Karim criticized her for not having healthy snacks.[24] Ms. Schwartz then put healthy snacks in the lunch room and Mr. Karim complained she did not let him know there were snacks in the lunchroom.[25] Ms. Schwartz then began e-mailing employees, including Mr. Karim, to let them know the snacks were in the lunchroom.[26] Then Mr. Karim criticized her for not having enough fruit and healthy snacks for everyone.[27]

Mr. Karim accused Ms. Schwartz of causing the cleaning woman to quit because she criticized her.[28]  Ms. Schwartz "never had any issue with [the cleaning woman] or had a problem with her" so Mr. Karim wrongly said it was her fault.[29]  Mr. Karim set up interviews with prospective employees on a casual Friday and "intentionally" did not inform Ms. Schwartz, leaving her "very upset" because she was dressed in jeans and hoodie with her hair in a ponytail.[30]  When meeting with the staff he supervised, Mr. Karim told them he refused to "deal with" Ms. Schwartz during reviews and then he and his employee did not show up to the review meeting or showed up really late because he "felt the whole thing was a waste of his time."[31]

Mr. Karim stated Ms. Schwartz only came to his area "to complain about his staff."[32]  Ms. Schwartz complained about an employee managed by Mr. Karim, "Suhail", because he used the "internet inappropriately and against company policy" to watch croquette, play games, and watch television.[33]  Nicomatic's IT personnel confirmed Mr. Suhail had higher internet usage than all other employees and she reported this to Mr. Fisher and Mr. Karim.[34]  Mr. Suhail tried to hide this from Ms. Schwartz but once, when he was away from his desk, she "took a peak at his history and was quite surprised by what [she] found."[35]  Ms. Schwartz did not tell or seek permission from Mr. Fisher or Mr. Karim to access Mr. Suhail's computer.[36]

Mr. Karim also publically pointed out Ms. Schwartz's mistakes.  For example, in March 2015, she mistakenly included a recently deceased employee and a recently fired employee in a PowerPoint and Mr. Karim "nit-picked" and "replied all" pointing out her mistake to everyone.[37]  When Ms. Schwartz told Mr. Fisher about Mr. Karim's "nit-pick," Mr. Fisher called her "sensitive and thin-skinned."[38]  Mr. Karim also complained Ms. Schwartz's employee appreciation breakfast in March 2015 was "disorganized" but it was delayed due to morning

snow and no one else complained.[39]  Mr. Karim also disliked the concept of serving the employees breakfast as a manager, he only wanted to serve his own employees.[40]

Mr. Karim told Mr. Fisher and Mr. Heft Ms. Schwartz failed to send him testing for a prospective candidate but Mr. Heft showed Mr. Karim the e-mail Ms. Schwartz sent with the prospective candidate's testing.[41]  Mr. Heft told Ms. Schwartz this happened and Ms. Schwartz did not take any further action.[42]

During Nicomatic's "BG Day," a strategy and team building event for Nicomatic employees around the world, in November 2015, Ms. Schwartz booked hotel rooms for the salespeople on her company credit card but the hotel declined her credit card.[43]  Ms. Schwartz was not there when the card was declined but Mr. Karim was and he, instead, used his company credit card to pay for the hotel.[44]  Mr. Karim "deliberately" never told Ms. Schwartz her card was declined and she did not learn it until the hotel called to tell her.[45]  Also during BG Days, Ms. Schwartz met with Julian Nicollin, the president of Nicomatic in France, and complained about Mr. Fisher.[46]  Ms. Schwartz did not complain about gender harassment but abut "what goes on in the plant" and how it is Mr. Fisher's way or no way.[47]

Ms. Schwartz felt "at that point [he] was just a jerk" because "he was always picking on [her]."[48]  Ms. Schwartz complained to Phil Heft, a business unit manager with Nicomatic, about Mr. Karim's conduct towards her.[49]

Other female employees complained about Mr. Karim to Ms. Schwartz but none of them characterized it as gender discrimination.[50]  A female employee told Mr. Karim she was pregnant but requested he keep it confidential.[51]  Mr. Karim instead shared the information with Mr. Nicollin, one of Nicomatic's owners.[52]  Mr. Karim also belittled this female employee based on "just the way he talks to females … like they are dumb."[53]  Ms. Schwartz reported this female's

complaint to ADP TotalSource liaison Mary Jayne Dwyer who said it was "too late" because the conduct was too far in the past.[54]

Mr. Karim also offended another female employee, Cathy Juarb, when he called her "Dawn's little helper." Dawn works in accounting but Dawn's gender is unclear.[55] Ms. Juarb asked Ms. Schwartz to address it with Mr. Karim.[56] She told him Ms. Juarb found his comment "offensive" because she is not "a little helper," she is an accounting clerk but Mr. Karim refused to apologize because he "didn't say anything wrong."[57] Ms. Schwartz informed Mr. Fisher of Ms. Juarb's complaint and Mr. Karim's response and Mr. Karim eventually did apologize to Ms. Juarb. Ms. Schwartz did not report Ms. Juarb's to ADP TotalSource.[58] A third female employee who worked in IT complained about the way Mr. Karim "talks to people, the way he talks to her" but she preferred not take her complaint any further.[59]

At some point, Mr. Karim told Ms. Schwartz he no longer wanted to do time cards for the three females in the assembly parts under his department.[60] Ms. Schwartz does not recall why Mr. Karim made this request.[61] Mr. Karim also complained after she told male staff they should not use the female restrooms.[62]

Ms. Schwartz told Ms. Dwyer of ADP TotalSource she was "constantly belittled" and "once again, the male co-workers, they pretty much get away with murder before something's done, and I get in trouble for the littlest things or told about for the littlest things."[63] Ms. Dwyer "downplayed" Ms. Schwartz's complaints.[64] Maureen Bradley replaced Ms. Dwyer at ADP TotalSource in May 2015.[65] Ms. Schwartz complained to Ms. Bradley about the difference with her male co-workers and the constant belittling.[66]

### C.  Ms. Schwartz's issues with her manager, David Fisher.

Ms. Schwartz was the only woman to hold a "leadership role."[67]  She felt Mr. Fisher, her manager, also treated her differently from the men in leadership.[68]

In October 2014, Ms. Schwartz complained to Ms. Dwyer of ADP TotalSource about Mr. Fisher.[69]  She told Ms. Dwyer she felt she was being "pushed out" by Mr. Fisher because he took her duties away, excluded her from management, and informed her she was not a manger.[70]  Ms. Dwyer does recall this call about being pushed out and characterized Ms. Schwartz's half a dozen calls as "venting" and stated Ms. Schwartz requested she not make notes.[71]

Ms. Schwartz also asked Mr. Fisher to promote her to manager several times because there were no female managers.[72]  Mr. Fisher did not respond initially to her requests but then refused her telling her he would consider promoting her to manager in the future.[73]  Mr. Fisher then offered Ms. Schwartz a promotion to quality manager but she declined the position to stay in human resources.[74]  Mr. Fisher told Ms. Schwartz he offered her the quality manager position to "kill two birds with one stone" because she would get a management position and Nicomatic would have a female manager.[75]

Ms. Schwartz believes Mr. Karim "fed" Mr. Fisher information on her "at the beginning."[76]  Whenever Mr. Karim complained about Ms. Schwartz to Mr. Fisher, Mr. Fisher would scrutinize the complaint and Ms. Schwartz.[77]  Mr. Fisher never disciplined or wrote her up.[78]  Mr. Fisher also routinely criticized and rejected Ms. Schwartz's suggestions.  Ms. Schwartz suggested keeping employees' days off in a central location and he rejected it.[79]  Mr. Fisher also wanted Ms. Schwartz to feature a game for work lunches as an "ice-breaker" but employees told her they hated the games so she did not plan a game and Mr. Fisher criticized her for not having a game.[80]  He said "for $70,000 we should show some employee satisfaction"

meaning for the $70,000 salary Nicomatic paid Ms. Schwartz, Mr. Fisher wanted to see employee satisfaction.[81] Mr. Fisher also told Ms. Schwartz she "target[ed] employees for asking for updated information on I9 forms."[82] Mr. Fisher also criticized Ms. Schwartz for asking interviewees about family and children but Ms. Schwartz denies asking these questions.[83]

Mr. Fisher told Ms. Schwartz someone complained Ms. Schwartz was "unprofessional" and she was "picking on people" her in a management meeting.[84] Ms. Schwartz asked two managers who were at the meeting and they said her name was not mentioned.[85] Once during a meeting, Ms. Schwartz commented about how she was prepared and Mr. Fisher rejoined "for the first time."[86] Nicomatic discouraged employees from using their personal cell phone during work and Ms. Schwartz "very, very rare[ly]" use[d] her phone.[87] One day she took a call from her husband at 4:55pm and Mr. Fisher walked by and then waited at her door until she hung up to say, "I thought you never used your phone on company time?"[88] Mr. Fisher put Ms. Schwartz down a least once a week.[89]

Mr. Fisher criticized Ms. Schwartz for bringing a job applicant to interview because she had two previous workers' compensation claims.[90] He also "snapped" at her in front of other staff for not training an employee but it was not Ms. Schwartz's duty or assignment to train that employee.[91] Mr. Fisher also required Ms. Schwartz to e-mail him explaining why she did not clock in one morning" but did not require explanations from anyone else.[92] Mr. Fisher also accused Ms. Schwartz of clocking out at 3:30pm but he incorrectly looked at the wrong employee and Ms. Schwartz left at 5:10pm.[93]

At some point, Mr. Fisher and Ms. Bradley from ADP TotalSource met with Ms. Schwartz and told her she was negative and asked her to "[p]ut on a happy face."[94]

**D.     Nicomatic's treatment of male employees.**

Ms. Schwartz claims the criticisms pointed at her are distinct from how Nicomatic treats male employees.  For example, Nick repeatedly talked on his phone, refused to wear safety gear and was written up for violating these policies.[95]  Nick also failed a drug test but Mr. Fisher wanted to offer him rehabilitation, instead of firing him under Nicomatic's policy.[96]  Ron Bowers had repeated attendance issues which Ms. Schwartz and his manager addressed with him. Nicomatic terminated Mr. Bowers' employment for his attendance issues.[97]  Mr. Suhail violated Nicomatic's internet policy but his manager, Mr. Karim, did not terminate him.[98]  Rocco consistently arrived late or not at all because of family issues and Ms. Schwartz does not believe Nicomatic addressed his infractions but she is not aware if his direct supervisors spoke to him.[99] Takisha, a man who worked as a cable machine operator, fell asleep while his machine ran and his supervisor caught him and wrote him up for an infraction.[100]  Carlos, supervised by Mr. Fisher, had repeated performance issues for which Nicomatic terminated his employment.[101] Even with all inferences in Ms. Schwartz's favor, Nicomatic treated each disciplinary matter on its own merit as a case-by-case decision.

**E.     Ms. Schwartz's medical leave.**

In February 2016, Ms. Schwartz had problems with her blood pressure and spent two days in the hospital.[102]  Her doctor then placed her on a week of bedrest. She returned to work 30 hours the next week and then back to her normal 45 hour work week shortly after.[103]  While on bedrest, Mr. Fisher e-mailed Ms. Schwartz with payroll questions and she told him she was on bedrest and could not answer the questions.[104]  Mr. Fisher accepted her refusal and also approved her leaving early for medical needs when she returned.[105]

When Ms. Schwartz returned from bedrest, she asked Maureen Bradley for information about the Family Medical Leave Act, because Nicomatic may employ the 50 persons necessary to qualify under the Act, but Ms. Bradley never sent her the information.[106]  Ms. Schwartz had the applications for both leave under both the Act and Nicomatic's medical leave plan when it was under 50 employees "printed out on [her] desk" but she was not sure which plan applied, although her role undisputedly included Nicomatic's human resources.[107]  Ms. Schwartz never needed additional medical leave so she never applied for leave.[108]

**F.      Ms. Schwartz complains of harassment to President of Nicomatic's parent.**

On March 2, 2016, the president of Nicomatic in France, Julian Nicollin, visited the Warminster facility of its subsidiary.[109]  Ms. Schwartz told Mr. Nicollin she felt harassed, treated differently than her male co-workers, and called it a hostile work environment.  She told him "it's Dave-o-matic, not Nicomatic."[110]  She described how Mr. Karim treats females, "it depends on who you are and how you're treated."[111]  Mr. Nicollin listened to her for over an hour and he seemed to get "annoyed" but thanked her sharing this information.[112]  Mr. Nicollin then asked Ms. Schwartz what he could do for her and she responded, "it didn't matter anymore because, you know, I've already reached my point ….I was looking for another job."[113]  She also said she liked her job and did not want to leave but did not like how she was treated.[114]

**G.      Nicomatic terminates Ms. Schwartz's employment.**

In March 2016, ADP TotalSource began to investigate an incident between two employees Anna and Deb.[115]  The incident involved Anna speaking on her phone loudly and Ms. Schwartz observed the employees on either side of Anna "looking over in aggravation" but Anna did not stop talking.[116]  Ms. Schwartz went over to Anna's manager and pointed out the employees are obviously annoyed and the manager went over to say something.[117]  Anna,

however, believed Deb complained about her.[118]  When Anna learned Ms. Schwartz actually made the complaint, she complained directly to ADP TotalSource because she felt she could not talk to Ms. Schwartz.[119]  During the investigation, Ms. Bradley also spoke with Mr. Nicollin about Ms. Schwartz's conversation with him and he stated her complaints "did not appear to be an issue of harassment."[120]  In April, shortly after Ms. Schwartz spoke with Mr. Nicollin, Nicomatic held a sales meeting but did not invite her based on her meeting with Mr. Nicollin because she "should have been included."[121]

Sometime before April 8, 2016, Ms. Bradley e-mailed Ms. Schwartz stating she would be at Nicomatic to speak with Deb and Ms. Schwartz stated Deb would not be in.[122]  Ms. Bradley requested Ms. Schwartz meet with her while there and they scheduled a meeting for April 15.[123]

On April 15, 2016, Mr. Fisher and Ms. Bradley met with Ms. Schwartz to discuss her position with Nicomatic.  When Ms. Schwartz arrived, Mr. Fisher began by wanting to end her employment amicably and for her to take severance pay.[124]  Ms. Schwartz asked what happens if she refused severance pay and he stated she would be put on performance improvement plan and explained why.[125]  Ms. Schwartz responded she needed another six weeks working in human resources to qualify for a certification in the human resources field.[126]  Mr. Fisher and Ms. Bradley offered eight weeks of severance pay and to call her a consultant so she could still apply for her certificate, and they also would not contest her unemployment.[127]

Ms. Schwartz accepted the offer because she felt Mr. Fisher would not permit her to take the performance improvement plan and he made it "very clear" he wanted her gone.[128]  She also could not read the separation agreement because she did not have her reading glasses but Mr. Fisher told her not to get her glasses and to "just sign it."[129]  Mr. Fisher's "last words" to Ms. Schwartz were "I don't know what you said to Julian [Nicollin], but he made it seem as if this

relationship was irreversible."[130]  Mr. Fisher denies saying this and testified he and Ms. Bradley had no intention of firing Ms. Schwartz because "we hadn't done anything to justify firing her."[131]  Mr. Fisher testified he called Ms. Schwartz to see if she would return to work but Ms. Bradley testified she and Mr. Fisher would not consider Ms. Schwartz returning to work.[132] These conflicting accounts create some inconsistency in the reasons why Nicomatic fired Ms. Schwartz.

Ms. Schwartz then rescinded the severance agreement within the seven day window.[133] Mr. Fisher twice left voice mails telling Ms. Schwartz it would not pay severance because she rescinded the agreement.[134]  Ms. Schwartz did not listen to the message "until forever afterwards" and did not return his call or return to work at Nicomatic.[135]  Nicomatic replaced Ms. Schwartz with a female.[136]

## II.  Analysis

Ms. Schwartz sued her employer Nicomatic, Inc. and its related entities and consultant ADP TotalSource, Inc., and its affiliate ADP TotalSource FL XVII, Inc. (collectively "Nicomatic") alleging "unlawful gender discrimination and/or retaliation in violation of Title VII."[137]  Ms. Schwartz alleged Nicomatic discriminated against by terminating her employment because they regarded her as disabled violating the Americans with Disabilities Act.  Ms. Schwartz also alleges Nicomatic's discrimination in firing her based on her gender and disability violated Pennsylvania's Human Rights Act.  Ms. Schwartz alleges Nicomatic interfered and retaliated with her exercise of rights under the Family Medical Leave Act.

Nicomatic moves for summary judgment on Ms. Schwartz's Title VII claims but there is confusion as to which exact claims Ms. Schwartz brings under Title VII between the pleadings and summary judgment motions.[138]  In her complaint, Ms. Schwartz does not clearly separate out

her Title VII claims but generally alleges "unlawful gender discrimination and/or retaliation in violation of Title VII."[139]  Nicomatic moves for summary judgment on Title VII gender discrimination and retaliation under Title VII.  In her response to summary judgment, Ms. Schwartz argues she adduced evidence of a hostile work environment claim based on gender and a retaliation claim under Title VII.  We presume Ms. Schwartz's abandoned her Title VII gender discrimination claim.  Ms. Schwartz's unplead hostile work environment claim is more complicated.  Her complaint does not mention "hostile work environment" or reference severe or pervasive conduct and Nicomatic did not move for summary judgment on a hostile work environment claim.

### A.  Ms. Schwartz does not adduce evidence of Title VII gender discrimination.

Ms. Schwartz alleges Nicomatic discriminated against her on the basis of her gender by terminating her employment for violations when Nicomatic did not enforce these same violations against male employees.  Ms. Schwartz offered no argument in her response as to her gender discrimination claim.  Ms. Schwartz also fails to adduce evidence of a genuine dispute of material fact whether Nicomatic terminated her employment based on gender.

Under the *McDonnell Douglas* framework, Ms. Schwartz must adduce evidence (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the "action occurred under circumstances that give rise to the inference of unlawful discrimination."[140]  We use the *McDonnell Douglas* framework in the absence of direct evidence of discriminatory animus, to determine if Nicomatic's termination of is motivated by discriminatory animus based on gender.[141]

Ms. Schwartz is a woman, qualified for her job, and Nicomatic terminated her employment.  Ms. Schwartz must then point to facts showing an inference Nicomatic fired her

because she is a woman. Ms. Schwartz did not testify to any direct evidence of gender based discrimination because she never testifies to an affirmative derogatory statement about women by either Mr. Fisher or Mr. Karim. Ms. Schwartz instead testified she perceived Mr. Fisher and Mr. Karim belittled and picked her because she was a woman.

In the absence of direct evidence, Ms. Schwartz can create an inference Nicomatic fired her because she was a woman by adducing evidence "similarly situated persons outside the protected class were treated more favorably" or other evidence establishing "some causal nexus between … membership in a protected class and the [adverse action]."[142]

Ms. Schwartz first fails to adduce evidence Mr. Fisher treated a similarly situated male employee differently. Ms. Schwartz can meet this burden by showing "two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."[143] Ms. Schwartz argues her termination raises the inference of gender discrimination because male employees committed infractions and never suffered adverse action. Mr. Fisher supervised Ms. Schwartz and allegedly wanted to fire her because she reported to his supervisor Mr. Fisher only scrutinized her infractions because she was a woman, treating her differently from male employees. Besides the final meeting where Mr. Fisher offered her a performance improvement plan, he never formally wrote up Ms. Schwartz for an infraction.

Ms. Schwartz testified about six male comparators, however, she testified three of the male comparators, Ron Bowers, Takisha, and Carlos, were either written up or fired for their infractions discounting their value as comparators.[144] The other three males either did not share the supervisor or engaged in conduct so dissimilar they cannot be a comparator. Suhail is not a

comparator because he was supervised by Mr. Karim, not Mr. Fisher and allegedly used the internet for non-work purposes, an infraction, which Mr. Fisher never alleged Ms. Schwartz committed.[145]  Rocco is similarly not a comparator because he was supervised by Phil Heft and Elsa, not Mr. Fisher and Ms. Schwartz does not know if either supervisor subjected Rocco to formal or informal scrutiny.  Nick allegedly failed a drug test but Ms. Schwartz testified Mr. Fisher wanted to offer him rehabilitation, instead of firing him under Nicomatic's policy.[146] Based on her testimony, we will assume Mr. Fisher supervised both Ms. Schwartz and Nick. Nick cannot be a comparator because allegedly failing a drug test is too dissimilar from being scrutinized for minor infractions to compare if Mr. Fisher treated them differently based on gender.  Ms. Schwartz fails to adduce evidence of a male employee supervised by Mr. Fisher who committed minor infractions and received no criticism or scrutiny.

Ms. Schwartz can also use other evidence to establish a causal nexus between her protected class and the adverse action, however, she fails to adduce evidence of a causal nexus. Even if we considered "me too"[147] evidence from other female employees, Ms. Schwartz testifies three female employees complained about Mr. Karim's, not Mr. Fisher's conduct, and also testified the women did not couch their complaints as gender discrimination.[148]

We grant summary judgment for Nicomatic on Ms. Schwartz's Title VII and PHRA gender discrimination claim because she fails to adduce evidence of a genuine dispute of material fact of a causal nexus between her gender and the adverse employment action.[149]

### B.    Ms. Schwartz does not adduce evidence of Title VII hostile work environment based on gender.

Ms. Schwartz alleges a hostile work environment claim based on gender for the first time in response to Nicomatic's motion for summary judgment.  She does not allege hostile work environment and Nicomatic consequently did not move for summary judgment on it.  We

address her claim because there is no prejudice to Nicomatic as Ms. Schwartz fails, in any event, to adduce evidence of a *prima facie* case of hostile work environment based on gender.

To proceed, Ms. Schwartz must adduce evidence: (1) Mr. Karim and Mr. Fisher intentionally discriminated against her based on her gender; (2) Mr. Karim's and Mr. Fisher's discrimination was severe or pervasive; (3) the discrimination detrimentally affected Ms. Schwartz; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability."[150] "Severe or persuasive" requires evidence Mr. Karim's and Mr. Fisher's discrimination "alter[ed] the conditions of [Ms. Schwartz's] employment and create[d] an abusive working environment."[151] We look "at all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [Ms. Schwartz's] work performance."[152]

For the first element, Ms. Schwartz fails to adduce evidence of intentional discrimination based on gender by either Mr. Karim or Mr. Fisher. Because Title VII is not a "code of civility for the work place," Ms. Schwartz must adduce evidence beyond rude or inappropriate conduct, she must show Mr. Karim or Mr. Fisher intentionally harassed *because of* her gender.[153] Ms. Schwartz offers no evidence Mr. Karim's or Mr. Fisher's comments were based on her gender besides her own perception it was because she was a woman. Neither used derogatory terms for women, or allegedly ever mentioned Ms. Schwartz's gender in a negative manner.

In *Deans v. Kenndey House, Inc.*, in a plead hostile work environment claim, a man alleged intentional discrimination based on gender and race because his supervisor made numerous comments about the man's childcare responsibilities, took disciplinary actions against the man, and engaged in heightened scrutiny of the man's work.[154] The court found the man did

not allege intentional discrimination because none of the supervisor's "actions is clearly discriminatory" and the man did not allege the supervisors "ever made overtly racist or sexists comments."[155]

Ms. Schwartz's allegations center on scrutiny and criticism of her work, as in *Dean*, and the record is devoid of a clearly discriminatory action taken by or an overt sexist or gender based comments made by Mr. Karim or Mr. Fisher. Ms. Schwartz fails to adduce evidence of intentional discrimination because of her gender and fails to adduce evidence of a *prima facie* but unplead claim for hostile work environment based on gender.

### C. Ms. Schwartz adduces scant but enough evidence of Title VII retaliation.

Ms. Schwartz alleges Nicomatic retaliated against her for complaining to Mr. Nicollin about Mr. Fisher's gender based harassment. A Title VII retaliation claim requires Ms. Schwartz adduce evidence "(1) she engaged in activity protected by Title VII; (2) [Nicomatic] took an adverse employment action against her; and, (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[156] Viewing evidence in the light most favorable to her, Ms. Schwartz adduces evidence she engaged in protected activity by reporting her view of Mr. Fisher's gender based harassment to Mr. Nicollin, Mr. Fisher's supervisor and an adverse employment action, Nicomatic terminating her employment.

Ms. Schwartz is able to establish a *prima facie* case of retaliation based on her alleged complaint of gender based harassment, although unable to adduce evidence of a *prima facie* case of gender-based disparate impact discrimination because the evidence required is different. In *LaRochelle v. Wilmac Corp.*, one of the employees, Ms. LaRochelle alleged her co-worker harassed her by touching her breasts and making sexually suggestive comments.[157] Ms. LaRochelle complained to her superiors but nothing happened, and her co-worker "intensified"

his sexual advances.[158]  One night in September 2010, in front of their superior, her co-worker slapped Ms. LaRochelle on the backside and made a sexually suggestive comment.[159]  Ms. LaRochelle told to remove his hands and their superior told the co-worker to "keep [his] hands off our House Nigger."[160]  This superior also made other racist remarks to Ms. LaRochelle, including using the n-word and Ms. LaRochelle reported it to a supervisor but the supervisor told her it was "just joking" but he would speak with the superior.

The night of her co-worker's assault, Ms. LaRochelle attempted to file a police assault report but the night supervisor told her it would be handled in-house so Ms. LaRochelle gave the night supervisor a written complaint against her co-worker and superior.[161]  Ms. LaRochelle also complained directly to human resources director about the co-worker's sexual harassment and assault and he told her to follow the "chain of command."[162]  On September 22, 2010, Ms. LaRochelle complained about her co-worker's sexual harassment and her superior's racial harassment to the Administrator.[163]

Two days before she was fired, on October 1, 2010, Ms. LaRochelle also gave a written complaint about this harassment to the Director of Nursing who tore it up and threw it in the trash.[164]  Ms. LaRochelle left the Director's office and shortly after, the Director called telling her employment was terminated.[165]  The employer alleges it terminated her employment for missing work two consecutive days without notice, October 1st and 2nd, 2010.[166]

Ms. LaRochelle alleged racial discrimination under § 1981 and retaliation under Title VII.  The district court granted summary judgment for the employer on Ms. LaRochelle's racial discrimination claim because she failed to show causal nexus between the superior's racist comments and her being fired because she did not adduce "evidence of a racially discriminatory

animus on the part of any of the decision makers in her termination or allege that similarly situated employees who were not members of her protected class were treated differently."[167]

The district court, however, denied summary judgment for the employer on Ms. LaRochelle's retaliation claim because she adduced evidence she complained about harassment to numerous superiors in late September, including to the director of nursing, who ripped up her complaint two days before firing her on October 1st.[168] The court found she adduced evidence for a jury to find the employer fired Ms. LaRochelle for reporting the alleged harassment.[169]

Ms. Schwartz, as in *LaRochelle*, fails to raise a causal connection between any gender-based derogatory comments from Mr. Fisher or evidence of similarly situated persons outside her protected class treated differently to make a *prima face* case of gender discrimination under Title VII. Ms. Schwartz, however, does adduce evidence of temporal proximity and factual inconsistencies between her alleged complaint of gender-based harassment by Mr. Fisher to his superior and her being fired.

Having shown a *prima facie* case, the burden now shifts to Nicomatic to articulate a legitimate, nondiscriminatory reason for terminating Ms. Schwartz's employment.[170] Nicomatic meets the burden with evidence of Ms. Schwartz's performance deficiencies and it offered Ms. Schwartz the option to be placed on a performance improvement plan or a severance package if Ms. Schwartz decided not to accept the performance improvement plan.[171]

The burden now shifts back to Ms. Schwartz to adduce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Nicomatic's] proffered legitimate reasons" to show discriminatory animus is really the motivating factor for Nicomatic terminating her employment.[172] Ms. Schwartz must show "by a preponderance of the evidence

that there is a 'but-for' causal connection' between the adverse employment action and retaliatory animus."[173]

Viewing the evidence in a light most favorable to Ms. Schwartz, she adduces evidence on March 2, 2016, she complained to Mr. Nicollin about her manager Mr. Fisher stating she felt harassed, treated differently than her male co-workers, and called the local Warminster facility a hostile work environment. She also told him Mr. Karim treats female employees different.[174] Mr. Nicollin testified when Ms. Schwartz complained to him she never mentioned being treated differently because she was a woman but only complained about Mr. Fisher's micro-managing style.[175] This material fact is disputed.

Ms. Schwartz also adduces evidence Mr. Nicollin told Mr. Fisher the contours of her complaint because Mr. Fisher told her "I don't know what you said to Julian [Nicollin], but he made it seem as if this relationship was irreversible."[176] Mr. Fisher denies saying making this statement.[177] Ms. Bradley also testified Mr. Fisher asked her to contact Mr. Nicollin to find out what Ms. Schwartz said to Mr. Nicollin during the March 2nd meeting.[178] In Nicomatic's EEOC response, however, Mr. Fisher denies knowing of Ms. Schwartz's meeting with Mr. Nicollin until after they fired Ms. Schwartz.[179] Ms. Schwartz also testified Mr. Fisher planned to fire her because the first thing he told her was they wanted to end her employment amicably and for her to take severance pay and the performance improvement plan did not come up until she asked what happened if she did not accept the severance package.[180] Ms. Schwartz also adduces evidence challenging whether Mr. Fisher's true intention was to fire her because Mr. Fisher testified after Ms. Schwartz revoked the severance agreement he called her to ask her when she was coming back to work. By comparison, Ms. Bradley testified she and Mr. Fisher would not consider Ms. Schwartz returning to work after she revoked the severance agreement.[181]

While the evidence to support Mr. Fisher's gender based discriminatory animus is very thin, at this stage we must resolve all inferences in Ms. Schwartz's favor and the disputes are based entirely on the credibility of witnesses which must be resolved by the jury. We deny Nicomatic summary judgment on Ms. Schwartz's Title VII retaliation claim.

**D.    Ms. Schwartz does not adduce evidence of disability discrimination.**

Ms. Schwartz argues Nicomatic regarded her as disabled based on her high blood pressure and discharged her because of her disability violating the Americans with Disabilities Act. To prove Nicomatic discriminated against Ms. Schwartz based on her disability, she must adduce evidence "(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise able to perform the essential functions of the job, with or without reasonable accommodations by the employer; and, (3) [she] suffered an otherwise adverse employment decision as a result of discrimination."[182]    To be a "qualified individual with a disability", Ms. Schwartz adduce evidence "she has mental impairment that substantially limits a major life activity, has a record of such an impairment, or is regarded as having such an impairment."[183]

Ms. Schwartz argues she is not disabled but Nicomatic "regarded" her as being disabled after her hospital stay and bedrest for high blood pressure. Ms. Schwartz is otherwise able to perform her job and Nicomatic terminated her employment. Ms. Schwartz, however, Ms. El must adduce a causal connection between Nicomatic regarded her as disabled and the adverse employment action of being fired.[184] Ms. Schwartz argues a causal connection exists because "at the time" Nicomatic fired her, Nicomatic did not know if her "condition would abate" because Ms. Schwartz testified she still was still undergoing testing. Undergoing medical testing alone is not enough to establish an inference of discriminatory animus. Ms. Schwartz does not testify Mr. Fisher made a discriminatory comment about her high blood pressure, and admits when she

told him she could not work while on bedrest, Mr. Fisher did not retaliate or act in a negative way towards her.[185] Ms. Schwartz also testified Mr. Fisher approved her leaving early for medical needs when she returned without comment.[186] Ms. Schwartz adduced no evidence of animus based on disability.

We grant summary judgment on Ms. Schwartz's ADA and PHRA disability discrimination claim because she fails to adduce a genuine dispute of material fact Nicomatic's termination of her employment is causally connected to Nicomatic "regarding" her as disabled to create an inference of disability discrimination.[187]

**D.     Ms. Schwartz did not adduce evidence of Family Medical Leave Act retaliation or interference.**

To prevail on her Family Medical Leave Act retaliation claim, Ms. Schwartz must adduce evidence "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision; and, (3) the adverse action was causally related to her invocation of rights."[188] For a Family Medical Leave Act interference claim, Ms. Schwartz must adduce evidence (1) she was entitled to take FMLA leave on a certain date; and, (2) Nicomatic denied her the right to take leave.[189]

Ms. Schwartz fails to adduce a *prima facie* claim of FMLA retaliation or interference because she never invoked her right to take FMLA-qualifying leave nor did Nicomatic ever interfere with leave because she never applied for FMLA leave. Ms. Schwartz does not testify she used FMLA leave for her hospitalization and bedrest. Ms. Schwartz first asked about FMLA leave when she returned from bedrest and asked Ms. Bradley whether, if she needed leave, the Family Medical Leave Act applies because Nicomatic may qualify based on 50 employees.[190] Ms. Schwartz, the human resources manager in charge of payroll, alleges Ms. Bradley never confirmed the employee number so she was unsure which applications, one for federal and non-

federal, to use if she needed more leave.[191]  Ms. Schwartz never needed additional medical leave so she never submitted either leave plan application.[192]

We grant Nicomatic summary judgment on Ms. Schwartz's FMLA claims because she does not adduce evidence of a *prima facie* case because she never invoked her right under the Act and she was never entitled to leave under the Act.

## III.   Conclusion

In the accompanying Order, we grant Nicomatic summary judgment dismissing Ms. Schwartz's gender discrimination and hostile work environment claims under Title VII and PHRA.  We also grant Nicomatic summary judgment dismissing her disability discrimination claim under the ADA and PHRA and her interference/retaliation claim under the FMLA.  We deny Nicomatic summary judgment on Ms. Schwartz's Title VII retaliation claim because there are genuine disputes of material fact whether her complaints to the Nicomatic President, and whether she actually complained, of gender discrimination are the motivating factor for Nicomatic terminating her employment.

---

[1]  Appendix, p. 82 (hereafter "A-0082".)  We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Ms. Schwartz, "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits.  Nicomatic filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. No. 23. Ms. Schwartz responded to Nicomatic's Statement of Undisputed Facts and filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. No. 24-25.  Nicomatic responded to Ms. Schwartz's Statement of Undisputed Facts and added exhibits to the Appendix at ECF Doc. No. 31.

[2]  A-0007.

[3]  A-0007, A-0083.

[4]  A-0083.

[5]  A-0082.

[6] A-0083.

[7] A-0029.

[8] *Id.*

[9] A-0083. Nicomatic, Inc. co-employs individuals with ADP TotalSource, a professional employment organization. ADP TotalSource handles Nicomatic's account management, provides human resource consultation, workers' compensation assistance, and recommends "best practices" for terminating employees.

[10] A-0098.

[11] A-0010.

[12] A-0013.

[13] A-0023, A-0027.

[14] A-0010.

[15] A-0012.

[16] A-0010.

[17] A-0011.

[18] A-0012.

[19] A-0023.

[20] A-0089.

[21] A-0012.

[22] *Id.*

[23] A-0024.

[24] *Id.*

[25] A-0013.

[26] *Id.*

[27] A-0025.

[28] A-0014.

[29] *Id.*

[30] A-0027.

[31] A-0022, A-0032.

[32] A-0026.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] A-0022.

[38] A-0049.

[39] A-0022.

[40] A-0035.

[41] A-0031.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] A-0043.

[47] *Id.*

[48] A-0014.

[49] *Id.*

[50] A-0029.

[51] A-0027.

[52] *Id.*

[53] A-0028.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] A-0029.

[59] *Id.*

[60] A-0048.

[61] *Id.*

[62] A-0051.

[63] A-0040.

[64] *Id.*

[65] A-0118.

[66] A-0041.

[67] A-0015.

[68] *Id.*

[69] A-0367.

[70] *Id.*

[71] A-0139.

[72] A-0039.

[73] A-0040.

[74] *Id.*

[75] A-0067.

[76] A-0015.

[77] A-0039.

[78] *Id.*

[79] A-0044.

[80] *Id.*

[81] *Id.*

[82] A-0045.

[83] *Id.*

[84] A-0036.

[85] *Id.*

[86] A-0054.

[87] A-0066.

[88] *Id.*

[89] A-0054.

[90] A-0048.

[91] A-0053.

[92] *Id.*

[93] A-0054.

[94] A-0056.

[95] A-0036-37.   The parties curiously do not proffer full names for many of the witnesses, including Nick.

[96] A-0037.

[97] *Id.*

[98] *Id.*

[99] A-0038.

[100] A-0039.

[101] *Id.*

[102] A-0041.

[103] *Id.*

[104] A-0042.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] A-0043.

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] A-0070.

[115] A-0068.

[116] A-0069.

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] A-0046.

[122] A-0070.

[123] *Id.*

[124] A-0060.

[125] *Id.*

[126] *Id.*

[127] *Id.*

[128] *Id.*

[129] A-0061.

[130] A-0066.

[131] A-0108, A-0110.

[132] A-110, A-0132.

[133] A-0076.

[134] A-0077.

[135] *Id.*

[136] A-0132.

[137] ECF Doc. No. 1, ¶ 39.

[138] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[139] ECF Doc. No. 1, ¶ 39.

[140] *Mason v. Southeastern Pennsylvania Transportation Authority*, 134 F. Supp. 3d 868, 873 (E.D. Pa. 2015)

[141] *See id.* (citing *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999)) ("In the absence of direct evidence that the employer's decision was motivated by discriminatory animus, a plaintiff may produce evidence that creates the inference of discrimination").

[142] *Lamb v. Montgomery Township*, No. 15-6759, 2016 WL 7426125 at *11 (E.D. Pa. Dec. 23. 2016) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)).

[143] *See Opsatnik v. Norfolk S. Corp.*, 335 Fed. Appx. 220, 222-23 (3d Cir. 2009)).

[144] A-0037-39.

[145] A-0037.

[146] *Id.*

[147] *See Mandel v. M & Q Packing Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) ("so called 'me too' evidence" neither "*per se* admissible nor *per se* inadmissible" but is fact question on how closely the evidence relates to plaintiff's theory of discrimination).

[148] A-0029.

[149] *See Scheidemantle v. Slippery Rock University State System of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (analyzing plaintiff's Title VII and PHRA gender discrimination claims together).

[150] *Moody v. Atlantic Board of Education*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Mandel*, 706 F.3d at 167).

[151] *Id.* at 214 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[152] *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).

[153] *Connell v. Nicholson*, 318 Fed. Appx. 75, 78 (3d Cir. 2009) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)); *accord Kokinchak v. Postmaster General of the United States*, 677 Fed. Appx. 764, 768 (2017); *Tourtellote v. Eli Lilly and Co.*, 636 Fed. Appx. 831, 846 (2016); *Page v. Trustees of University of Pennsylvania*, 222 Fed. Appx. 144, 146 (2007); *Nardella v. Philadelphia Gas Works*, 997 F. Supp. 2d 286, 296 (E.D. Pa. 2014); *Petril v. Cheney University of Pennsylvania*, 789 F. Supp. 2d 574, 579 (E.D. Pa. 2011).

[154] *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 415 (E.D. Pa. 2014).

[155] *Id.*

[156] *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

[157] *Larochelle v. Wilmac Corporation*, 210 F. Supp. 3d 658, 669-70 (E.D. Pa 2016)

[158] *Id.* at 670.

[159] *Id.*

[160] *Id.*

[161] *Id.*

[162] *Id.*

[163] *Id.*

[164] *Id*

[165] *Id.*

[166] *Id.*

[167] *Id.* at 691.

[168] *Id.* at 699.

[169] *Id.*

[170] *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *McDonnell Douglas*, 411 U.S. at 802).

[171] A-0092, A-0104.

[172] *Willis*, 808 F.3d at 644 (citing *Fuentes*, 32 F.3d at 674).

[173] *Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 258 (3d Cir. 2017) (internal citations omitted).

[174] A-0043.

[175] A-0155.

[176] A-0066.

[177] A-0108, A-0110.

[178] A-0131.

[179] A-0284.

[180] A-0060.

[181] A-110, A-0132.

[182] *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaunt v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)).

[183] *Id.* (citing 42 U.S.C. § 12102(2)).

[184] *See Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 759 (3d Cir. 2004) (internal citations omitted) (finding plaintiff did not adduce a causal link between his request for accommodation and the adverse employment action).

[185] A-0042.

[186] *Id.*

[187] *See Williams*, 380 F.3d at 761 n.6 (internal citations omitted) (analyzing ADA and PHRA disability claims together).

[188] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012) (internal citations omitted).

[189] *Id.* at 312 (citing *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

[190] A-0042.

[191] *Id.*

[192] *Id.*